[Civ. No. 7132. Third Dist. Nov. 24, 1945.]

F. W. KOENIG, as Trustee, Respondent, v. CHARLES G. JOHNSON, as State Treasurer, etc., et al., Appellants.

742

Robert W. Kenny, Attorney General, John L. Nourse and Daniel N. Stevens, Deputies Attorney General, for Appellants.

Latham & Watkins for Respondent.

ADAMS, P. J.—Plaintiff brought two actions, one to recover franchise taxes and interest paid for the taxable years 1934 to 1939, and the other for such taxes and interest paid for the year 1939. The actions were consolidated for trial. The taxes which were the subject of the controversy were imposed under the "Massachusetts or Business Trust Tax Act" of California (Stats. 1933, ch. 211, p. 708, as amended Stats. 1933, ch. 1049, p. 2694; Stats. 1935, ch. 323, p. 1084; Deering's Gen. Laws, 1937, Act 8447a), hereinafter called the act, on the theory that the Koenig trust, hereinafter referred to as the trust, was a business trust doing business within this state, within the meaning of the aforesaid act. These actions were based upon the contention that the said trust was not such a business trust nor was it doing business within the meaning of the act.

The actions were tried upon two stipulations of facts, the declaration of trust, the deposition of plaintiff Koenig, and certain schedules attached to the tax returns. The trial court filed a written opinion in which it stated that while the evidence supported the view that the trust was in fact doing business during the period for which the tax was imposed, it was not a Massachusetts or business trust within the mean-

ing of the act. From the judgment for plaintiff which followed, this appeal was taken.

From the stipulation of facts it appears that the trust was established in 1931 when plaintiff, F. W. Koenig, Elsa Koenig, his mother, and Gertrude K. Guttman, his sister, entered into an agreement which provided that they should vest the title of their respective properties in F. W. Koenig, as trustee, with the trustors as beneficiaries. The trust was to continue until the death of the last beneficiary living at the time of its creation unless the trustors jointly should revoke it by written instrument. The whole title to the trust property, both legal and equitable, was vested in F. W. Koenig, and the declaration provided that the beneficiaries took no interest or estate therein, their only interest consisting of the right to enforce due performance. The trustee was empowered to collect the principal and interest, rents, issues and profits of the trust estate, and, after specified payments and deductions, to pay the entire net income available for distribution, quarterly or in other convenient installments, to the trustors in the proportions which the contributions of each bore to the whole trust estate. Provisions were made for disposition of the interest of any one of the trustors in the event of the death of such trustor. Additional powers vested in the trustee were as follows:

"At his option and as long as he may deem advisable, to retain any property and to continue and operate any business which he may receive hereunder, the profits and losses, if any, to inure or be chargeable respectively to the Trust Estate and not to the Trustee. To manage, control, sell, convey, partition, divide, subdivide, exchange, improve, repair, and to encumber by mortgage, trust deed or otherwise and in such manner and in accordance with such procedure as it may deem advisable, the trust estate or any part thereof. To lease the Trust Estate, or any part thereof, for terms, within or extending beyond the duration of this Trust, and to grant for like terms, the right to mine or drill for and remove therefrom, gas, oil, and/or any other minerals or substances. . . . To invest the principal (and income if accumulated) in any property, whether or not permissible by law as investment for Trust funds. . . . To borrow money and as security therefor pledge or mortgage the whole or any part of the Trust Estate; to convey the fee title thereto to such person or corporation as it shall select for the purpose of creating such indebtedness and

executing and delivering any and all instruments necessary to evidence and secure the debt and to reconvey said property to the Trustee subject thereto; . . . To have respecting bonds, shares of stock and other securities, all the rights, powers and privileges of an owner, including, though without limiting the foregoing, holding securities in his own name or otherwise, voting, giving proxies, payment of calls, assessments and other sums deemed by the trustee expedient for the protection of the interests of the Trust Estate, exchanging securities, selling or exercising stock subscription or conversion rights, participating in foreclosures, reorganizations, consolidations, mergers, liquidations, pooling agreements, voting trusts, assenting to corporate sales, leases and encumbrances; the Trustee, however, to assume or to be under no personal liability in respect to any securities at any time held hereunder. To reimburse himself from the income and/or principal of the Trust Estate for any loss, liability or expense incurred by reason of his ownership or holding of any property received or held in this trust. All discretions in this trust conferred upon the Trustee shall, unless specifically limited, be absolute and uncontrolled and their exercise conclusive on all persons interested in this Trust or the Trust Estate. The powers and discretions of the Trustee enumerated herein are not to be construed as a limitation upon his general powers and discretions, but the Trustee in addition thereto is hereby vested with and shall have, for the full duration of this trust, as to the Trust Estate, the income therefrom, and in the execution of this trust, the same and all the powers and discretion that an absolute owner of property has or may have.''

It was further provided that the trustee might, in the event of his absence from the state, illness or other incapacity, appoint First National Bank of Los Angeles, or any other duly qualified corporation, as custodian of the trust estate; that he might resign, in which event such bank or other corporation should succeed to the trusteeship with all the powers, duties, etc., provided for in the trust instrument.

The stipulations of the parties show that during the years 1934 to 1938 the average security holdings of the trust consisted of from 100 to 125 blocks of securities. In those years the sales of securities averaged approximately 100 sales of blocks of securities per year. A large majority of these sales were of securities held for short periods. Thus during 1934 respondent sold 65 blocks of securities held less than one year

at a net profit of $8,758.67, and 11 blocks of stock held more than one year but less than two, at a net gain of $6,929.50; in 1935 he sold 53 blocks of stock held less than one year for a profit of $10,281.57, and 22 over one year and less than two for a net profit of $2,680.71; in 1936 he sold 45 blocks of stock held less than one year, realizing a net gain of $8,514.50, and 29 sales of stock held one to two years for a $7,721.36 profit; in 1937 he sold 77 blocks of securities held less than one year, together with 44 held one to two years, 16 held two to five years, and 3 held over five years, these sales realizing a net gain of $5,463.93; and in 1938 he sold 56 blocks of stock held less than one year for a net gain of $5,728.11, and 13 blocks held one to two years for a net loss of $6,442.59 Of those securities sold during this period which had been held by the respondent for less than one year, a large percentage were held less than six months, 44 being in that class in 1934, 31 in 1935, 22 in 1936, and 45 in 1937 and 1938 respectively. In addition, there was an appreciable number of sales of securities held less than a month: 4 in 1934, 5 in 1935, 5 in 1936, 22 in 1937, and 15 in 1938.

Besides these extensive dealings in securities the respondent purchased a lemon grove for the trust. He then leased the six-room house located on the property, and entered into a marketing contract with a fruit growers' cooperative association. Under this contract respondent agreed to harvest and deliver his fruit to the cooperative's packing house and the cooperative agreed to pack, ship and sell the lemons for respondent. Respondent operated the property through an independent contractor selected by him.

The act provided:

"*Section 1.* Every Massachusetts or business trust doing business within the limits of this State shall annually pay to the State for the privilege of doing business within this State a tax according to or measured by its net income to be computed in the manner hereinafter provided at the rate of four per centum upon the basis of its net income for the next preceding fiscal or calendar year.

. . .

"*Section 2.* Sections 4 to 38 inclusive of chapter 13, Statutes of 1929, entitled 'An act to carry into effect the provisions of section 16 of Article XIII of the Constitution of the State of California, relating to bank and corporation taxes,' as

amended, and any amendments thereto hereafter made shall apply, and shall be construed to apply to all Massachusetts or business trusts to the same extent and with the same force and effect as they are applicable to every corporation taxable under subdivision (3) of section 4 of said act.

"*Section 3*. The term Massachusetts or business trust as herein used shall include every business organization consisting essentially of an arrangement whereby property is conveyed to trustees where the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries but are associated together with similar or greater powers than the directors in a corporation for the purpose of carrying on some business enterprise.''

Section 5 of the Bank and Corporation Franchise Tax Act (Stats. 1929, ch. 13, as amended; Deering's Gen. Laws, 1937, Act 8488) which was incorporated into the act under consideration by section 2, *supra,* provided: ''The term 'doing business,' as herein used, means actively engaging in any transaction for the purpose of financial or pecuniary gain or profit.''

On this appeal it is contended by appellants that the trust was a business trust within the meaning of the act, and that it was doing business and therefore subject to be taxed for such privilege.

 That the transactions engaged in by the trustee constituted the doing of business seems to be settled beyond controversy by the decisions of our Supreme Court in *Golden State Theatre & Realty Corp.* v. *Johnson,* 21 Cal.2d 493 [133 P.2d 395), *Carson Estate Co.* v. *McColgan,* 21 Cal.2d 516 [133 P.2d 636], and *Hise* v. *McColgan,* 24 Cal.2d 147 [148 P.2d 616], and the decision of this court in *People* v. *Alexander Goldstein Co.,* 66 Cal.App.2d 771 [152 P.2d 1016] (hearing by Supreme Court denied). Here the business transactions engaged in by the trustee, as hereinbefore set forth, were much more numerous and extensive than those shown to have been engaged in by the Golden State Theatre and Realty Corporation, the Carson Estate Company, and Hise as commissioner; and they are similar to those engaged in by the Alexander Goldstein Company, though more extensive and numerous. We agree with the trial court that the evidence shows that respondent, as trustee, was doing business within the meaning of the act.

 Regarding appellants' contention that the trust was a business trust, respondent argues that it was not a ''business

organization," that it was not created "for the purpose of carrying on some business enterprise," and, particularly, that as it had but one trustee and therefore did not have "trustees" "associated together with similar or greater powers than the directors in a corporation," it did not come within the meaning of the act. Argument of respondent is based upon the assumption that section 3 of the act limits the kind of business trust taxable under the act to those having more than one trustee, and that no trust that does not fit into the pattern of that section can be held to be within the purview of the act.

We do not so construe the measure. While it recites that the term Massachusetts or business trust as used therein shall *"include"* every business organization consisting essentially of an arrangement whereby property is conveyed to trustees, etc., trusts having but one trustee are not thereby excluded from its provisions. The words "include" and "including" when used in a statute are not ordinarily used as words of limitation but rather of enlargement.

In *Fraser* v. *Bentel,* 161 Cal. 390 [119 P. 509, Ann.Cas. 1913B 1062], one of the questions before the court was whether a covenant running with certain land forever prohibiting the use of firearms thereon, constituted an "encumbrance." Section 1114 of the Civil Code declared that "The term 'encumbrances' includes taxes, assessments, and all liens upon real property"; and it was contended that since the restriction against the use of firearms was not therein mentioned, it could not be considered an encumbrance. But the court held that the section did not exclude limitations of a perfect title other than those enumerated; that the word "includes" is not, ordinarily, a word of limitation, but rather of enlargement. That case is cited in *American Surety Co.* v. *Marotta,* 287 U. S. 513, 517 [53 S.Ct. 260, 77 L.Ed. 466, 468], in which the words "shall include" in a tax act were held not the equivalent of "shall mean" or "shall include only."

In *Peerless Carbon Black Co.* v. *Sheppard* (Tex.Civ.App.) 113 S.W.2d 996, a tax statute imposed an occupation tax on every person manufacturing or producing carbon black, and provided: "The term 'carbon black' as herein used includes all black pigment produced in whole or in part from natural gas, casinghead gas or residue gas by the impinging of a flame upon a channel disk," etc. And it was contended that carbon black produced by other methods was excluded. The opinion states, pages 997-998:

"In thus defining the occupation or business taxed, appellant has substituted the term 'by which is meant' instead of the word 'includes' as used in the taxing act, and apparently contends that the term 'by which is meant' is identical with the word 'includes.' This contention is not sustained. The word 'includes' as used in the act is not identical with nor equivalent to the word 'meant,' or the clause 'by which is meant,' because the authorities hold that such a word or clause is less elastic than the word 'includes.' 97 A.L.R. 1382. 'The word "includes" is not, ordinarily, a word of limitation, but rather of enlargement.' *Fraser* v. *Bentel,* 161 Cal. 390, 119 P. 509, 511, Ann. Cas. 1913B, 1062. The words 'includes' and 'including' are regarded by the authorities as being identical or equivalent to each other; and the authorities uniformly hold that unless the context in which such words are used requires, they are never regarded as being identical with or equivalent to 'mean and include,' nor with such less elastic words and terms as 'meant,' 'meaning,' or 'by which is meant.' *Lederer* v. *Penn. Mut. L. Ins. Co.,* 3 Cir., 258 F. 81 [169 C.C.A. 167]; *United States* v. *The Betsey and Charlotte,* 4 Cranch 443, 2 L.Ed. 673; 12 C.J. 528, and note 52. In 31 C.J. 395, § 3C, it is said that while the word 'including' is susceptible of different shades of meaning, 'it is generally employed as a term of enlargement and not a term of limitation, or of enumeration.' The cases cited from numerous jurisdictions sustain this text. In consequence, it follows that the use of the word 'includes,' as used in the taxing act under consideration, instead of some less elastic word or term, such as 'meaning,' 'meant,' or 'by which is meant,' would seem clearly to imply that the Legislature did not intend to use the word 'includes' as one of limitation or of enumeration, but rather of enlargement, or as illustrative of those intended to be included within the taxing act. See, also, 4 Words and Phrases, First Series, 3499, 3500; 2 Words and Phrases, Second Series, 1007, 1008."

*In re Harper,* 175 F. 412, 423, deals with the Bankruptcy Act which provided: "'Debt' shall include any debt, demand, or claim provable in bankruptcy." The court said: "It was not intended that definitions of words used in the act which read 'shall include' should exclude other meanings or definitions of the word, or limit the ordinary and well-understood meanings. It was intended, as the words used plainly indicate, to make sure that they would be held to include what is

expressed.'' (Also see *Helvering* v. *Morgan's, Inc.*, 293 U.S. 121, 124-125 [55 S.Ct. 60, 79 L.Ed. 232, 235]; *United States* v. *National City Bank of New York*, 21 Fed. Supp. 791, 795; *Jacksonville Terminal Co.* v. *Blanshard*, 77 Fla. 855 [82 So. 300, 301]; *Lynch* v. *Gleaner Combine Harvester Corp.*, 223 Mo. App. 196 [17 S.W.2d 554, 556]; *Bartlett Hayward Co.* v. *Industrial Acc. Com.*, 203 Cal. 522, 531 [265 P. 195].)

The context of the act before us does not require that in order to be subject to the tax a trust must have trustees who shall be associated together, etc. All that is required, as stated in section 1 of the act, is that it shall be a business trust doing business in this state. That the Koenig trust was a business trust, as distinguished from one whose purpose was the collection of funds and their payment to beneficiaries, and that it was doing business as that term is defined in the act and within the decisions of the courts of this state above cited, appears from the language of the trust instrument as well as from the evidence of the activities which were carried on by the trustee.

As to what constitutes a business trust as distinguished from an ordinary trust, there are numerous pertinent decisions of the federal courts. In *Morrissey* v. *Commissioner of Internal Revenue*, 296 U.S. 344 [56 S.Ct. 289, 80 L.Ed. 263]; where business trusts were claimed to be taxable as ''associations'' under federal statutes imposing taxes upon ''corporations, associations, joint-stock companies and insurance companies,'' the court said, p. 357 (L.Ed. pp. 270-271):

''In what are called 'business trusts' the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains. Thus a trust may be created as a convenient method by which persons become associated for dealings in real estate, the development of tracts of land, the construction of improvements, and the purchase, management and sale of properties; or for dealings in securities or other personal property; or for the production, or manufacture, and sale of commodities; or for commerce, or other sorts of business; where those who become beneficially interested, either by joining in the plan at the outset, or by later participation according to the terms of the arrangement, seek to share the advantages of a union of their interests in the common enterprise.''

The distinction between business trusts and those of the traditional type, as stated in the Morrissey case, is also stated in other decisions. (See *Hecht* v. *Malley*, 265 U.S. 144, 160-161 [44 S.Ct. 462, 68 L.Ed. 949, 959], distinguishing the earlier case of *Crocker* v. *Malley*, 249 U.S. 223 [39 S.Ct. 270, 63 L.Ed. 573], upon this ground; *Ross Lewis Trust* v. *Commissioner of Internal Revenue*, 110 F.2d 937; Mertens, Law of Federal Income Taxation, vol. 7A, § 43.12, pp. 805-807.)

Also, numerous decisions by United States courts hold that the nature of a trust as a business organization is to be determined from the terms of the trust instrument. In *Helvering* v. *Coleman-Gilbert Associates*, 296 U.S. 369, 373-374 [56 S.Ct. 285, 80 L.Ed 278, 281], the court said:

"We agree with the Circuit Court of Appeals that weight should be given to the purpose for which the trust was organized, but that purpose is found in the agreement of the parties. Not only were they actually engaged, as the Board of Tax Appeals determined, in carrying on an extensive business for profit, but the terms of the trust instrument authorized a wide range of activities in the purchase, improvement and sale of properties in the cities and towns of the State. The parties are not at liberty to say that their purpose was other or narrower than that which they formally set forth in the instrument under which their activities were conducted."

(Also see *Titus* v. *United States*, 150 F.2d 508; *Commissioner of Internal Revenue* v. *Security-First National Bank of Los Angeles*, 148 F.2d 937, 938-939; *Fletcher* v. *Clark*, 150 F.2d 239; Mertens, Law of Federal Income Taxation, vol. 7A, § 43.12, pp. 805-807.)

The trust instrument before us plainly authorized a wide range of business activity in the purchase and sale of properties, such as was held to constitute the doing of business by the decisions aforesaid, and was not constituted merely for the purpose of holding and conserving the property of the trustors.

██ The obvious purpose of the act was to require trusts doing business within the state and enjoying profits therefrom to pay a tax for the privilege, and to bear their share of the tax burden along with the corporations, etc., which likewise were doing business and enjoying profits. ██ But if there be doubt as to the intent of the Legislature we are authorized to resort to extrinsic aids to interpret it, such as its con-

temporary history, the circumstances under which it was passed, and the mischief at which it was aimed. (*Harrison* v. *Northern Trust Co.*, 317 U.S. 476, 479 [63 S.Ct. 361, 87 L.Ed. 407, 410]; *United States* v. *American Trucking Associations*, 310 U.S. 534, 542-544 [60 S.Ct. 1059, 84 L.Ed. 1345, 1350-1351]; *United States* v. *Dickerson*, 310 U.S. 554, 561-562 [60 S.Ct. 1034, 84 L.Ed. 1356, 1362]; *County of Los Angeles* v. *Frisbie*, 19 Cal.2d 634, 639 [122 P.2d 526]; *People* v. *Ventura Refining Co.*, 204 Cal. 286, 292 [268 P. 347, 283 P. 60]; *People* v. *Earl*, 19 Cal.App. 69, 71-72 [124 P. 887]; *In re Crutcher,* 61 Cal.App. 481, 485 [215 P. 101]; 2 Sutherland Statutory Construction, 3d. ed., p. 481, et seq.) Regarding the present act, the California Tax Research Bureau, in a report made March 1, 1932, stated that business trusts were becoming common in the state, and that since they came directly into competition with and frequently took the place of business corporations which were required to pay a franchise tax, and enjoyed the same privileges and advantages as other business organizations required to pay the tax, equitable treatment required a tax for them also. On December 1, 1932, it submitted to the Legislature a report recommending the enactment of such a measure, and the act of 1933 followed.

We find nothing in either these reports or elsewhere indicating that in taxing business trusts those having only one trustee should be exempt. As was said by the Supreme Court in this state in *Estate of Steehler,* 195 Cal. 386, 402 [233 P. 972], " . . . where two interpretations of the provisions of a statute imposing taxes are urged, that one should, if possible, be adopted which lays the burden of taxation uniformly upon those who bear that burden and who stand in the same degree with relation to the tax, . . ."

 Respondent does not contend that the act is invalid, and he concedes that it is applicable to trusts having more than one trustee; but, contending that it would be improper to make it applicable to trusts having but one trustee, invokes the rule that tax statutes are to be construed strictly in favor of the taxpayer and against the taxing power. However, when an evasion of the provisions of a statute is attempted, a liberal construction should be given in order to prevent such evasion. (*Estate of Reynolds,* 169 Cal. 600, 603 [147 P. 268].) But what respondent is claiming is, in effect, that having but one trustee the Koenig trust is exempt from the tax; and the rule is well established that in case of claims

of exemption from the terms of a taxing statute, strict construction against such exemption should be adopted. (See *Estate of Bull,* 153 Cal. 715, 718 [96 P. 366]; *Estate of Steehler, supra; Bay Cities Transportation Co.* v. *Johnson,* 8 Cal.2d 706, 712 [68 P.2d 710]; *Estate of Morris,* 56 Cal. App.2d 715, 727 [133 P.2d 452].)

Furthermore, a distinction for tax purposes, of a trust having one trustee, from another similar in all other respects and carrying on similar activities, but having two or more trustees, would not only be inconsistent with the purposes of the act, but would constitute an unjust discrimination against the latter, which we must assume the Legislature did not intend.

As stated in section 1, the tax is imposed for the privilege of doing business within this state; and when a business trust is doing business within the state it would seem to be immaterial whether, as a taxable entity, it had one trustee or ten. Had the act specifically provided that business trusts having two or more trustees were subject to the tax and that those having but one trustee were exempt, a claim that such a distinction resulted in an unfair discrimination would doubtless have justification. And if the situation were reversed and the tax were imposed upon only those trusts having one trustee this plaintiff would doubtless claim that such a provision unfairly discriminated against them. The only interpretation of the act which would result in a uniform imposition of the tax burden is that a trust constituting a business entity doing business within the state is taxable regardless of the number of its trustees.

A tax measure, in order to be valid, must lay its burdens uniformly upon all those who come within a proper classification of the persons to be subjected to its burden; and such a classification must have some reasonable basis for a differentiation between those who are and those who are not to be taxed; it must be founded upon some natural, intrinsic or constitutional distinction, and a purely adventitious condition can form no reasonable basis for a classification. (*People* v. *Yosemite Lumber Co.,* 191 Cal. 267, 276-277 [216 P. 39]; *Barker Bros., Inc.* v. *Los Angeles,* 10 Cal.2d 603, 607 [76 P.2d 97]; *Soares* v. *City of Santa Maria,* 38 Cal.App.2d 215, 217-218 [100 P.2d 1108].) We can find no reasonable basis for differentiation for tax purposes, between business trusts doing business within the state having one trustee, and

similar trusts having two or more, and, therefore, must assume that the Legislature did not intend to make such distinction.

Respondent also urges, in support of his contention that the Legislature intended to exempt business trusts having but one trustee, that when, in 1939, the Legislature repealed the Massachusetts or Business Trust Act, and incorporated section 2(b) into the Corporation Income Tax Act (Stats. 1939, ch. 1049; Deering's 1939 Supp., Act 8494a), it intended to change the meaning of section 3 of the repealed act, and that the new section may be looked to in construing the prior one. Said section 2(b) provides:

"The term 'corporation' as herein used shall include every corporation, association, and Massachusetts or business trust, except a bank or banking association. For the purposes of this act a Massachusetts or business trust includes every business organization consisting essentially of an arrangement whereby property is conveyed to one, or more than one, trustee for purposes other than the mere conservation of assets, collection and disbursing of fixed and periodic income, or the securing of an obligation."

While as a general rule an intention to change the law is to be inferred from a material change in the language of a statute, on the other hand a change may indicate a legislative intent to clarify its true meaning; and surrounding circumstances may be considered in order to determine the intent with which the change was made. *Hise* v. *McColgan, supra,* is persuasive in this connection. There the court had under consideration a 1943 amendment to the Bank and Corporation Franchise Tax Act defining the words "bank" and "corporation" to include "any 'corporation' operated by any receiver, liquidator, referee, trustee or other officers or agents appointed by any court." The section had previously read: "The term 'corporation,' as herein used, shall include every corporation, other than a bank or banking association, and other than those expressly exempted from the tax by the provisions of this act or the Constitution of the State of California." (Stats. 1929, p. 19; Deering's Gen. Laws, Act 8488, § 5.) The Supreme Court held that the amendment was for clarification purposes, citing: *Union League Club* v. *Johnson,* 18 Cal.2d 275 [115 P.2d 425]; *San Joaquin Ginning Co.* v. *McColgan,* 20 Cal.2d 254 [125 P.2d 36]; *Martin* v. *California Mutual B. & L. Assn.,* 18 Cal.2d 478 [116 P.2d 71].

In the Union League Club case above cited the court, in

holding that an amendment to a statute was intended to clarify rather than to change the existing law, said, page 279 :

"But in view of the fact that at the time this amendment was made, social clubs were resisting the collection of sales taxes, a legislative intent to clarify rather than to change the law, may well be inferred."

In *San Joaquin Ginning Co.* v. *McColgan,* also cited above, where the Legislature enlarged the definition of the word "reorganization" as used in section 13j of the Bank and Corporation Franchise Tax Act to include a distribution in liquidation by a corporation of all or a substantial portion of its business or property to a corporate stockholder, the court said that in some cases similar liquidation transactions had been held to be reorganizations, and that the inclusion of the added phrase in the amended section did not necessarily amount to a declaration of the Legislature that something was added which was not within the language of the definition as theretofore in force; and it added, pages 263-264 :

"The foregoing observations are a sufficient basis from which to draw the conclusion that such a transaction was within the meaning of reorganization as theretofore defined by the Legislature. The addition in 1939 of the specific type of transaction as constituting a reorganization was intended to clarify rather than to expand the definition of 'reorganization.' It has been held that if a certain class of taxpayers is resisting payment of taxes pursuant to a claimed construction of the taxing statute, the Legislature in enacting an addition to the statute may very well be deemed to intend a clarification of its previous language rather than a change in the existing law."

In *Martin* v. *California Mutual B. & L. Assn.* it was said that a consideration of the surrounding circumstances may indicate that an amendment was merely the result of a legislative attempt to clarify the true meaning of a statute. To the same effect see *W. R. Grace & Co.* v. *California Emp. Com.,* 24 Cal.2d 720, 729 [151 P.2d 215] ; *Standard Oil Co.* v. *Johnson,* 24 Cal.2d 40, 48 [147 P.2d 577]. (Also see *School District No. 18* v. *Pondera County,* 89 Mont. 342 [297 P. 498, 502] ; *Hugo* v. *Miller,* 50 Minn. 105 [52 N.W. 381, 383] ; *Lis' Estate,* 120 Minn. 122 [139 N.W. 300, 302] ; *Rural Independent School District etc.* v. *New Independent School District,* 120 Iowa 119 [94 N.W. 284, 286-287] ; *Kennedy* v. *Truss,* 40 Del. 424 [13 A.2d 431, 434] ; *United States* v. *Perkins,* 17 F.Supp. 177, 180-181.)

Prior to 1939 the Franchise Tax Commissioner had construed the act as including trusts with but one trustee, had determined that the Koenig trust was taxable thereunder, and demanded that it make returns; also certain federal decisions had considered whether under certain federal statutes trusts with but one trustee were taxable as "associations" within the meaning of such statutes; and, furthermore, appellant states that the records of the commissioner, prior to the introduction of the amendatory act in 1939, show that the Koenig trust had made returns in which it claimed it was not subject to the tax. ■ Also, regulations issued by the commissioner in November, 1937, had already indicated, by the use therein of the words "trustee or trustees" in reference to business trusts, that he was construing the act to apply to trusts having only one trustee; and while administrative interpretations are not binding on courts, they are persuasive in determining the construction to be put upon the language of a statute (23 Cal.Jur., § 152, p. 776) ; and the construction put upon the earlier act tends to show that the language of the 1939 statute was intended merely to clarify the earlier act to conform to the administrative construction put upon it.

■ In view of the foregoing we conclude that the substitution in the 1939 amendment, of the words "one, or more than one, trustee" for the word "trustees" in the prior act, was for the purpose of clarification, and that it was the intention of the Legislature that, under the prior act, a trust which would otherwise be taxable should not be exempt merely because it had only one trustee.

■ Both appellant and respondent rely upon federal decisions holding Massachusetts or business trusts to be "associations" within the meaning of United States statutes taxing corporations, associations, etc.; and respondent relies upon language used in decisions of the federal courts emphasizing the similarity of the trusts under consideration to corporations in order to bring them within the application of the word associations used in the various acts, arguing that there is no such similarity here. But in this respondent overlooks the fact that this California statute is not one taxing corporations, associations, joint stock companies and insurance companies as were the federal statutes which were under construction, and in which no reference was made to Massachusetts or business trusts, but is an independent act applying only to Massachusetts or business trusts; and unless the lan-

guage of section 3 compels a conclusion that in order to be taxable a business trust must be comparable to a corporation —which we have held it does not—the decisions relied upon by him are not pertinent on this point. However, if it were necessary to find that the act was intended to apply only to trusts which are comparable to corporations, only "resemblance and not identity" would be requisite. (*Morrissey* v. *Commissioner of Internal Revenue, supra; Titus* v. *United States,* 150 F.2d 508.)

In the Morrissey case, page 359 (L.Ed. pp. 271-272), the features of the trusts held to furnish sufficient resemblance to corporations were said to be continuity of succession, centralized management, security from termination by the death of owners of beneficial interests, and the opportunity for limitation of personal liability of participants to the property embarked in the undertaking. In the Titus case the trust—which was a family affair similar to the Koenig trust—was held to be an association within the meaning of the federal statutes, the court saying that it resembled a corporation in that it had centralized management, continuity of existence during the period of the term uninterrupted by the death of any of the members, limitation of liability, and means of transfer of beneficial interests, and that there were "associates"—the wife and sister—who held one share each while Titus, the sole trustee, held the remainder of the shares.

In *Hamilton Depositors Corp.* v. *Nicholas,* 111 F.2d 385, the court in holding a trust taxable as an association said that it had all of the attributes of an association held sufficient in the Morrissey case to justify classifying the trust as an association, to wit: continuing entity throughout the trust period, centralized management, continuity of the trust uninterrupted by death among the beneficial owners, means for transfer of beneficial interests, and limitation of personal liability of the participants to property embarked in the undertaking. (Also see *Ross Lewis Trust* v. *Commissioner of Internal Revenue,* 110 F.2d 937.)

Respondent in his brief sets forth numerous factors which he contends are essential to a finding of a resemblance to a corporation and which he asserts are lacking here; but as was said in the Morrissey case, page 358 (L.Ed. p. 271), ". . . definitions, while helpful, are not to be pressed so far as to make mere formal procedure a controlling test," and that "the absence of particular forms, or of the usual terminology of corporations, cannot be regarded as decisive."

The Koenig trust instrument provides for all or substantially all of the features mentioned in the foregoing cases; and as to respondent's contention that the act applies only to trusts having more than one trustee, even the federal courts have held that more than one trustee is not essential to a finding that a business trust is taxable under the federal statutes as an association. In *Titus* v. *United States, supra,* there was but one trustee, yet the trust was held taxable since under the trust agreement it had attributes of a corporation. (Also see *Hamilton Depositors Corp.* v. *Nicholas, supra; Ross Lewis Trust* v. *Commissioner of Internal Revenue, supra; Commissioner of Internal Revenue* v. *Security-First National Bank,* 148 F.2d 937; *Brooklyn Trust Co.* v. *Commissioner of Internal Revenue,* 80 F.2d 865; *Merchants' Trust Co.* v. *Welch,* 59 F.2d 630; *Ittleson* v. *Anderson,* 67 F.2d 323, 325; *Continental Bank & Trust Co.* v. *United States,* 19 F.Supp. 15.)

Finally, respondent asserts that even though it should be determined that the trust was subject to tax for the years prior to 1939, it was improperly taxed for 1939 and is entitled to recover the amount paid for that year. The reasons asserted are (1) that most of the corpus of the trust was distributed to the beneficiaries on January 1, 1939, and the remainder on July 1, 1939, and though bonds were sold during the interim, their sale was for the purpose of making a division of the proceeds; and (2) that as the Massachusetts or Business Trust Act "was repealed as of December 31, 1938," the trust should not have been taxed thereunder for 1939. He also asserts that the trust was taxed for the year 1939 under the Corporation Income Tax Act, and it was therefore subjected to double taxation.

Appellants, in controversion, point out that in 1939 rentals from property of the trust estate under lease were collected, as were interest on notes and bonds and dividends on stocks, the whole amounting to $14,187.77; and that between January 1 and July 1, 1939, plaintiff sold 1 security held one year or less, 2 held one to two years, 1 held two to five years, and 1 held over five years, the net gain on such sales amounting to $493.50, and that transactions of less volume were held in *Carson Estate Co.* v. *McColgan, supra,* and *Hise* v. *McColgan, supra,* sufficient to constitute doing business. They also point out that the Business Trust Act was not repealed until July 25, 1939. They concede, however, that the Legislature did not intend that both the franchise tax under the repealed act

and the income tax under the amended Income Tax ِAct should be paid, and say that the tax paid under the former was properly deductible from the corporate income tax assessed. They assert, however, that as the 1939 tax under the former act was based on 1938 income and accrued January 1, 1939, it was properly collected, and that though respondent, in a proper proceeding, is entitled to recover the amount paid under the Income Tax Act, such amount cannot be collected in this action since it was not brought for that purpose.

While plaintiff-respondent sued in two separate actions, the one for taxes paid for the years prior to 1939, and the other for those paid for the year 1939, the complaint in the latter action was not made a part of the record on appeal and is not before us, nor does it appear when it was filed. However, the motion to consolidate, which was made by plaintiff-respondent, is supported by his affidavit which alleges that both actions were brought for the recovery of franchise taxes and that in each the principal issue was whether the trust was a taxable business trust. Plaintiff's right to credit upon his 1939 corporation income tax for the amount paid for franchise tax for that year is therefore not an issue in the case before us, nor a matter proper for our determination on this appeal. Under the decisions in the cases above cited by appellants the trust was doing business during the year 1939 and was properly taxed under the Massachusetts or Business Trust Act which act was not repealed until July 25, 1939, after the trust estate had been finally distributed.

As for respondent's statement that the act was repealed as of January 1, 1939, section 23 of the 1939 amendment to the Corporation Income Tax Act (Stats. 1939, ch. 1049; Deering's Gen. Laws, Act 8488) provided that "The Massachusetts or Business Trusts Act . . . is hereby repealed except for the collection of taxes, penalties and interest accrued under its provisions, and for the refund of taxes erroneously collected under its provisions." Section 24 provided: "This act, inasmuch as it provides for a tax levy for the usual current expenses of the State, shall, under the provisions of section 1 of Article IV of the Constitution, take effect immediately, and shall be applied in the computation of taxes accruing subsequent to December 31, 1938." Respondent asserts that by virtue of section 24 business trusts were taxable only under the new act, beginning with the year 1939. But the franchise taxes to which respondent was subject had already accrued prior to

the date of repeal, and section 24, while it provided that the provisions of the amended Income Tax Act were to be applied to income received after December 31, 1938, did not state that business trusts were to be taxed *only* under the amended act.

Whether respondent was taxable under both acts, and whether, if an income tax was imposed upon the trust for the year 1939, respondent was entitled to be credited thereon with the amount paid for the franchise tax, are not issues in this case as far as the record shows; and as we are satisfied that the respondent was a business trust doing business in this state during the period in controversy, within the meaning of the act, the judgment should be and it is hereby reversed.

Thompson, J., and Peek, J., concurred.