[136 C.A.2d Supp. 919; 288 P.2d 637]

## Appellate Department, Superior Court, Los Angeles

[Civ. A. No. 8783.   Oct. 4, 1955.]

DIVISION OF LABOR LAW ENFORCEMENT, DEPARTMENT OF INDUSTRIAL RELATIONS, Respondent, v. STANDARD COIL PRODUCTS COMPANY, INC., Appellant.

Chase, Rotchford, Downen & Drukker for Appellant.

Pauline Nightingale, Edward M. Belasco and Leon H. Berger for Respondent.

SHAW, P. J.—The assignors of the plaintiff were discharged from their employment by defendant corporation, and plaintiff now seeks two weeks' vacation pay claimed to be due them. The trial court awarded $626.40, the amount prayed for in the complaint, and defendant appeals.

The contention of the appellant is that the employment of plaintiff's assignors on June 1, 1954, was a condition precedent to their right to vacation pay. In order to establish this the contract between appellant and the union setting forth the terms and conditions of employment was offered into evidence by appellant, and was rejected. Appellant contends that this ruling was error. We conclude that this contention must be sustained. While this contract was not in evidence, it has been placed in the record on appeal, so that we are able to review its contents.

Contrary to respondent's claim, this collective bargaining agreement was admissible under the general denial. "A contract of employment different from the one alleged by the employee in his action to recover compensation for his services, or any terms of the alleged contract, which would operate to bar his recovery, may be shown under the general issue or denial . . ." (56 C.J.S., p. 574, Master and Servant, § 128(b). To similar effect see 17 C.J.S. 1186, Contracts, § 549b.) And "It is firmly established by the decisions that the best evidence of the contents of a writing is the writing itself." (18 Cal.Jur.2d 659; Code Civ. Proc., § 1855; *Sublett* v. *Henry's etc. Lunch* (1942), 21 Cal.2d 273, 275 [131 P.2d 369].)

The contract in question was relevant and material as to the rights of the employees, both union and nonunion members. Although the collective bargaining agreement is in its inception a contract separate from the contract of employment, it may be incorporated into the separate contracts of hiring of the employees. (*MacKay* v. *Loew's, Inc.* (1950), 182 F.2d 170, 172.) It is in the nature of a general

offer, and an individual who accepts employment or continues his employment, after it becomes effective, does so on the terms and conditions thereby fixed. (See cases cited in note 95 A.L.R. 40, 41.) ■■■ When the agreement purports to cover all employees, nonunion members who adopt it are fully bound and protected by it. (*Yazoo & M. V. R. Co.* v. *Webb* (1933), 64 F.2d 902, 904; *Gregg* v. *Starks* (1920), 188 Ky. 834 [224 S.W. 459, 461].)

The collective bargaining agreement here does not apply to all of appellant's employees, but is limited to employees of certain classes for whom the "company [appellant] recognizes the Union as the sole and exclusive bargaining agent." One of plaintiff's assignors, McKeon, was not a part of this bargaining unit, and his case will be separately considered.

The other assignors, four in number, were within the description of the bargaining unit. They were all employed and joined the union prior to the date of the contract, December 13, 1952, and remained members of the union and in the same employment for some time after the contract was executed, with knowledge of its terms. Thereafter, by dealings to be considered later, they were removed from the bargaining unit and withdrew from the union.

Under the rule already stated the collective bargaining agreement applied to and governed the relations between the appellant and these four employees, as far as its terms extended. ■■■ It is respondent's claim that when these four were originally employed, certain oral agreements were made between them and the appellant, under which they were entitled to the vacation pay sued for. But these oral agreements were made long before the collective bargaining agreement, and it is clear to us that it was the intention of the latter agreement to terminate all previous arrangements regarding vacations. Moreover, on examining the testimony as to these oral agreements, we do not find that they are inconsistent with the collective bargaining agreements. While the oral agreements provided for vacations, they did not declare when they were to be taken, and the actual vacations allowed the employees under them were taken at the times specified in the collective bargaining agreement and would have been permitted by it.

The collective bargaining agreement contains many provisions regarding hours and times of work, rates of pay, seniority, and other matters affecting employment, and con-

tains one whole article entitled "Vacations and Holidays." Section 2 of this article provides: "The Company will grant vacation with pay to each employee in accordance with the following conditions: (a) In order for any employee to receive vacation pay under this Article, the employee must be in the active employ of the Company (not laid off, absent, resigned or dismissed or on leave) at the start of the vacation period as defined in this Article." Section 1 of the same article provides: "The vacation period shall be between June 1st and September 15th. The Company may elect to close the plant for a specified vacation period if it so desires or to stagger the vacations. Vacations will, as far as possible, be granted at times most desired by employees but the final right to allotment of vacation periods is exclusively reserved to the Company in order to insure the orderly operation of the plant." There is no doubt or ambiguity about the meaning of these provisions. ▇ While it is true that "Courts are disinclined to construe the stipulations of a contract as conditions precedent, unless compelled by the language of the contract plainly expressed" (*Division of Labor Law Enforcement* v. *Ryan Aero. Co.* (1951), 106 Cal.App.2d Supp. 833, 835 [236 P.2d 236, 30 A.L.R.2d 347]), yet in this case we are so compelled. ▇ To be entitled to a vacation in any year an employee must be "in the active employ of the company" on June 1 of that year. No such conditions existed in the contract construed in *Division of Labor Law Enforcement* v. *Ryan Aero. Co., supra,* on which plaintiff relies in support of its construction of the contract, and the rule of that case does not apply here. The four employees now under consideration were not actively employed on June 1, 1954, having been previously discharged.

In 1953 the four employees now under consideration were placed in different positions, which had the effect of removing them from the bargaining unit, and required them to withdraw from the union. But when these changes were made each of them had a conversation with appellant's personnel manager. As one of them said, he told her that "You will get your vacations like you have been getting them." Another said she had been getting her vacations in accordance with the union contract, and she was told that after she withdrew from the union she would "receive the same rights and privileges and conditions that you had under the union contract." It was stipulated that plaintiff's other assignors

would testify to the same effect, except McKeon who was not a member of the union or of the bargaining unit.

This testimony, in person and by stipulation, leaves the four assignors other than McKeon in the same situation as before they changed the nature of their employment, that is, they were subject to the provisions of the union contract regarding vacations, and under it they were not entitled, on the present record, to the pay for which suit was brought.

Possibly on a new trial a different conclusion may be reached as to these four employees. It was stipulated that each of them was discharged for lack of work. But two of them testified that they were not laid off according to seniority. By stipulation it was agreed that the other two would give the same testimony. But the record does not now show the effect of seniority. They testified that they were to have the same rights of seniority at the time of discharge as they had before, and the collective bargaining agreement, if it were in the record, would show that in case of reduction of forces "seniority shall prevail," which we take to mean that employees with the least seniority shall be laid off first. On these facts, if all were before the court, it might be found that the discharges were wrongful.

In *Roberts* v. *Mays Mills* (1922), 184 N.C. 406 [143 S.E. 530, 28 A.L.R. 338, 343], the court had under consideration a contract by an employer to pay his employees a bonus if they worked for him a certain time and up to a specified date. Holding this bonus was a part of the compensation to be paid to an employee for his services and not a gift or gratuity (28 A.L.R. 342), the court held further that he could not be deprived of it by a wrongful discharge, saying: ". . . the defendant, having accepted the benefit of the continued labors of the plaintiffs, could not deprive them of the bonus earned up to that time by discharge from their employment without legal and sufficient grounds." (28 A.L.R. 343.) A similar case is *Zwolanek* v. *Baker Mfg. Co.* (1912), 150 Wis. 517 [137 N.W. 769, Ann.Cas. 1914A 793, 44 L.R.A. N.S. 1214], which was cited and relied on in *Roberts* v. *Mays Mills, supra.* That a vacation is neither a gratuity or a gift is also held in *Division of Labor Law Enforcement* v. *Ryan Aero. Co., supra,* 106 Cal.App.2d Supp. 833, 836 [236 P.2d 236, 30 A.L.R.2d 347].

It is suggested in *Division of Labor Law Enforcement* v. *Mayfair Markets* (1951), 102 Cal.App.2d Supp. 943 [237

P.2d 463], that if the employer acted illegally, arbitrarily or in bad faith in discharging an employee before his vacation is earned, the employee would be entitled to recover on *quantum meruit* or substantial performance, citing with approval the cases of *Roberts* v. *Mays Mills, supra,* and *Zwolanek* v. *Baker Mills, supra.* ▮ While the court in the Mayfair Markets case did not act on this rule because it was not applicable to the facts, we conclude that it is a proper rule, and if the court should find here that defendant acted in violation of the rule of seniority, as above outlined, it should enter some judgment in favor of plaintiff.

▮ But as to McKeon we reach a different result. Perhaps the fact that he was not a union member would make no difference, for the contract purported to apply to all members of the bargaining unit. But the fact that he was not a member of the bargaining unit does affect his situation. The contract does not apply to him, and his rights are not affected by it. They must depend on the agreement made directly between him and the appellant, as far as now appears. What those rights may be we cannot now determine. He did not testify at the trial and an attempted stipulation as to his testimony is too uncertain for us to act upon it.

The judgment is reversed.

Patrosso, J., and Swain, J., concurred.