In the Matter of the CLAIM OF ANGELO MALASPINA, Appellant. EDWARD CORSI, as Industrial Commissioner, Respondent.

Argued November 21, 1955; decided January 12, 1956.

* Designated pursuant to section 5 of article VI of the State Constitution in the temporary absence of DESMOND and DYE, JJ.

*William Eldred Jackson, Mary B. Tarcher* and *George H. Bailey* for appellant. I. The Appellate Division, in holding that appellant had left his employment voluntarily, erroneously treated a question of fact as a question of law and, in so doing, erroneously overruled a contrary factual determination by the appeal board which was based upon substantial evidence and made new findings of its own not supported by evidence. (*Matter of Baida,* 282 App. Div. 975.) II. The doctrine of " constructive voluntary quit " is not and should not become the law of this state. (*Copper Range Co.* v. *Michigan Unemployment Compensation Comm.,* 320 Mich. 460; *MacFarland* v. *Unemployment Compensation Bd. of Review,* 158 Pa. Superior Ct. 418.) III. Even if the doctrine of " constructive voluntary quit " be accepted, the Appellate Division failed to consider and in effect overruled the findings of fact by the appeal board, supported by the evidence, which showed that the facts of the case did not come within the doctrine. (*Matter of Fiol* [*Calmar S. S. Corp.— Corsi*], 305 N. Y. 264; *Campbell Soup Co.* v. *Board of Review,* 13 N. J. 431; *Matter of Rumsey Mfg. Corp.* [*Corsi*], 296 N. Y. 113; *Matter of Hirschberg,* 273 App. Div. 936; *Matter of Mutual Benevolent Soc. of 1865,* 293 N. Y. 901; *Matter of Carroll* [*New York Military Academy*], 288 N. Y. 447.) IV. The Appellate Division's decision is also based on findings not made by the appeal board and not substantiated by the evidence. V. The Appellate Division erred in construing the 60-day provision of the agreement and, since appellant was discharged before expiration of the 60-day period, properly construed, he did not fail to comply with a condition of employment. (*Cole* v. *Rawlings Ice Co.,* 139 Neb. 439.)

*Jacob K. Javits, Attorney-General (Francis R. Curran* and *James O. Moore, Jr.,* of counsel), for respondent. I. Claimant-appellant voluntarily left his employment without good cause under the statute. *(Campbell Soup Co.* v. *Board of Review,* 13 N. J. 431.) II. The Appellate Division decided the case on the basis of the facts found by the appeal board. It did not make any new findings, and there is no reason for a remission of the case to the board for further findings. III. The employment with Standard and with National constituted one employment under the labor-management agreement, as found by the referee and appeal board. *(Matter of Technicon Cardiograph Corp. [Corsi],* 285 App. Div. 193.)

*Harold H. Levin, Howard Lichtenstein* and *Norman Gross* for Great Atlantic & Pacific Tea Company, *amicus curiæ,* in support of respondent's position. I. Section 593 of the Labor Law should be construed as it was prior to *Matter of Baida* (282 App. Div. 975) for the reasons stated in a long series of appeal board decisions and in numerous out-of-state decisions. Such consistent construction was in effect for a sufficient period to indicate legislative approval. *(Matter of Foscarinis,* 284 App. Div. 476.) II. If this were a case of first impression, a proper construction of section 593 would require affirmance of the decision below. Claimants, who bring about the termination of their employment by refusing to abide by collective bargaining agreements, should be considered as having voluntarily left their employment without good cause. *(Matter of Palmieri [Corsi],* 276 App. Div. 417; *Matter of Hansen [Corsi],* 283 App. Div. 908.) III. The employer should not be penalized for compliance with collective bargaining agreements. Union shop agreements do not violate this state's public policy. *(Plumbers Union* v. *Graham,* 345 U. S. 192.)

Fuld, J. Angelo Malaspina, an assembly hand, was employed from April 30 to June 13, 1953, and from October 7 to November 4 of the same year, by the Union Standard Equipment Company, a partnership, and the National Equipment Corporation, a corporation. The companies were under common control and claimant worked throughout both periods under the direction of the same foreman, doing the same work, and at the same location. Both concerns were

designated as "the Employer" in the collective bargaining agreement made by them with the International Association of Machinists. It was expressly provided in that agreement between employer and union that employees were under the necessity of joining the union within 60 days after they were hired. In paragraph 4, the parties agreed that "each employee covered by the terms of this agreement, as a condition of employment, shall become a member of the Union * * * within sixty days after the date of his employment, and shall remain a member of the Union * * * in good standing during the term of this agreement. If any employee covered by the terms of this agreement fails to become a member of the Union as above provided or, during the term of this agreement, fails to pay his periodic dues or the initiation fees uniformly required by the Union as a condition of acquiring or retaining membership, the Union will give written notice thereof to the Employer; and if within ten days after the receipt of such notice by the Employer, such employee has not joined the Union or paid such dues or initiation fees, he shall be summarily discharged by the Employer."

When Malaspina was first hired, on April 30, 1953, he was told that it was "a union job," that he had "a 60-day period — trial period. After 60 days he must join the union. If he don't join the union * * * [within a further period of] ten days, he must be dismissed." The question of his joining the union did not arise at that time, since he quit his job after being on it only 45 days. When rehired, on October 7 of the same year, he was told that his earlier employment, for 45 days, would count as part of the 60-day period within which he was required to join the union. Although he assured the union shop steward that he would, he paid neither the initiation fee nor the dues and, at the end of the 60-day trial period and of an extra 10-day notice period, he was discharged.

It had apparently been agreed between Malaspina and the shop steward that he might pay the $25 initiation fee in three installments, the first, of $10, on October 28, the first payday after the termination of the 60-day period. The shop steward was not at the factory on that day and Malaspina was absent from October 29 until November 3. Upon Malaspina's return on that day, the steward reminded him that the time had come

for him to pay $10, and Malaspina replied that he realized that, but did not have the money. The employer, notified of Malaspina's failure to join, discharged him, at the union's request, on November 4, 1953.

After a claim was filed for benefits to be effective November 4, the Industrial Commissioner made an initial determination that Malaspina had voluntarily left his employment without good cause, within the sense of the Unemployment Insurance Law, and was, accordingly, disqualified for benefits for a 42-day period following his discharge. The referee, before whom claimant requested a hearing, overruled that determination, declaring that " Claimant was separated from his employment because he failed to join the union within the required time. There was no voluntary leaving of employment under these conditions." The Appeal Board affirmed, but the Appellate Division reversed, holding that the claimant's failure to join the union within the time prescribed constituted a voluntary quit of his employment without good cause (285 App. Div. 564).

As is evident, the sole question presented is whether claimant, within the meaning of section 593 of the Unemployment Insurance Law (Labor Law, art. 18), left his employment " voluntarily " and " without good cause." Insofar as relevant, section 593 (subd. 1, par. [c]) provides:

" 1. Voluntary separation. In the case of any claimant who leaves his employment voluntarily   *   *   *

" (c) if such separation was without good cause, no benefits shall be payable to such claimant, nor shall he be credited with serving any part of the waiting period until forty-two consecutive calendar days have elapsed after his registration for benefits subsequent to such voluntary leaving if there was no withdrawal from the labor market or until such forty-two days have elapsed after the certification of his bona-fide return to the labor market and his availability for employment if there had been a withdrawal from the labor market."

The applicable collective bargaining agreement required that, within 60 days after being hired, an employee must join the union, and that, if he fails to do so, the employer must discharge him. Obviously, by refusing or failing to become a member,

the employee brings about his own discharge, and such action or inaction may not logically or reasonably be regarded as anything but voluntary on his part. In other words, joining the union was a condition precedent to continued employment; if, for any reason, he did not join and was discharged, he must be deemed to have quit voluntarily. If the rule were otherwise, the collective bargaining provision insisting upon union membership as prerequisite to employment would be considerably diluted, if not destroyed.

Claimant contends that a distinction should be made between an employee who "wilfully refuses" to join the union and one who "fails" to join within the prescribed period simply because of financial inability. In the latter case, he urges, the resulting discharge should not be treated as "voluntary." It may well be that a discharge is not to be considered voluntary where the employee fails to satisfy a condition of employment because of circumstances beyond his control — for example, where he is discharged pursuant to a provision in the union contract requiring dismissal at age 65. (See *Campbell Soup Co.* v. *Board of Review, Div. of Employment Security,* 13 N. J. 431.)

In the case before us, however, we are not dealing with a condition beyond the reasonable reach of the employee. All that the claimant herein had to do was pay the initiation fee or, by reason of the special arrangement, a portion of it, by November 4, and he knew that, if he did not become a member of the union by that date, he would be discharged from his job. Nothing turns upon the circumstance that his shop steward was absent from work on the day that payment of the stipulated installment became due or that claimant himself was away for a few days thereafter. The fact was that three other shop stewards were in the building on that day and, in any event, claimant had two days after his return, before the 70 days expired, in which he could have paid his own steward had he so elected. His failure to do so, as the Appellate Division wrote, was "quite as 'voluntary' an act as most choices between one course and another", and amounted "to an election by the employee not to meet a condition of the work" (285 App. Div. 564, 565).

There is a final point made by claimant which warrants mention. He argues that the decisions below were erroneous in

treating his two periods of employment, in the spring and fall of 1953, as *one* employment for the purpose of computing the 60 days within which he was required to join the union. That period should have been computed, he contends, from October 7, when he was rehired by the National Equipment Corporation, without taking into account the 45 days that he had worked for the Union Standard Company in May and June. As a result, the argument goes, the 60 days had not run by the time of his discharge, he had not failed to comply with a condition of employment and his discharge, therefore, was not voluntary.

Claimant does not, indeed cannot, challenge the finding that the corporation, National Equipment, and the partnership, Union Standard, were under common control and, for present purposes, constituted one employer. Instead, he suggests that, since he voluntarily left Union Standard in June, his subsequent rehiring by National Equipment was a new and separate employment. The record before us shows only that he left the job in June, because of an injury to his back, and that he was rehired in October. So far as appears, he had no other employment in the intervening time, and, on this record, there is no basis for disturbing the finding made by the referee and the Appeal Board and affirmed by the Appellate Division.

The reason for allowing the worker a waiting period before he is required to join the union is to give him time to decide whether he wants to join, for he may not know at the beginning whether he will like the job or be suited for it. (Cf. 1 Legislative History of the Labor Management Relations Act, 1947, pp. 300, 867.) When a worker quits before the trial period has run and then returns after a short time to the same employment, his knowledge of the job and ability to reach an informed decision about joining the union is in no way diminished by his temporary absence and there is no reason to allow him another and further 60 days in addition to the period he previously served. Any other conclusion would seriously impair the efficacy of contracts between employers and labor unions, particularly in industries where employment is seasonal or job mobility high, for workers could change jobs at frequent intervals without being required to join the union in any of them. The 45 days that claimant worked in May and June were, therefore, correctly considered as part of his 60-day trial period

and, since he knowingly failed to join within the required time, his separation from the job must be considered a voluntary quit. He was properly disqualified, pursuant to the statute, from receiving benefits for 42 days thereafter.

The order appealed from should be affirmed, without costs.

CONWAY, Ch. J., DESMOND, FROESSEL, VAN VOORHIS and BURKE, JJ., concur; DYE, J., taking no part.

Order affirmed.