[Civ. No. 24332.   Second Dist., Div. Two.   May 4, 1960.]

DOUGLAS AIRCRAFT COMPANY, INC. (a Corporation), Respondent, v. CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD et al., Appellants.

Stanley Mosk, Attorney General, and Herschel T. Elkins, Deputy Attorney General, for Appellants.

Louis Lieber, Jr., Elmer J. Stone and William D. Craig for Respondent.

KINCAID, J. pro tem.*—This is an appeal by the Department of Employment and California Unemployment Insurance Appeals Board from a judgment of the superior court that writ of mandate issue commanding said department and board to vacate and set aside certain rulings and orders imposing charges against the respondent employer's unemployment insurance reserve account for certain unemployment compensation benefits allowed to one of respondent's employees.

The primary question presented is whether a female employee, a member of a labor union, who takes an unpaid pregnancy leave of absence commencing with the fifth month of her pregnancy as required by a collective bargaining agreement between her employer and the union, should be held to have "left [her] most recent work voluntarily without good cause" within the meaning of Unemployment Insurance Code, section 1256.

There is no dispute as to the facts. The employee-applicant for unemployment insurance benefits, Alvilda C. Steffan, had worked for the respondent employer since 1955; and she was a member of a labor union.

While she was employed by respondent and a member of the union, respondent and the union entered into a collective bargaining agreement which was ratified by the members of the union.

Said collective bargaining agreement contained certain provisions, initially proposed by the employer, specifying that a pregnant employee "shall not be permitted to remain at work . . . beyond the end of the fourth month of pregnancy"; and further specifying that, when it became necessary at said time for a female employee to discontinue her employment, "she

*Assigned by Chairman of Judicial Council.

may voluntarily terminate, or if she has been in the employ of the Company for at least one year, she may apply for formal leave of absence . . .''

The employee became pregnant; and, when she had worked the maximum four months permissible under the collective bargaining agreement, she applied for and was granted a pregnancy leave of absence commencing on 8/16/58 at the end of the fourth month of her pregnancy.

On said 8/16/58, the employee, however, was in good physical health and still able to continue working until the end of October 1958 as shown by report and opinion of her doctor to such effect. She accordingly sought employment elsewhere but was unable to find such employment.

Thereupon she applied for unemployment compensation benefits upon the grounds that she was involuntarily unemployed and was able and willing to work until the end of October. Respondent objected on the ground that the employee had left her work and its employ voluntarily without good cause, and that she was, therefore, ineligible for unemployment compensation benefits.

The department of employment granted the employee's application for unemployment compensation benefits; and it determined and ruled in essence that no severance of employment relationship had occurred; that the employee was also involuntarily unemployed for purposes of determining her eligibility for unemployment compensation benefits; and that the employer's reserve account should be charged with the amounts of unemployment compensation allowed to the employee.

Respondent appealed to the department's referee and later to its appeals board from said ruling and determination. The said ruling and determination was affirmed on the appeal, except that it was held that respondent was not entitled to a ruling or determination as to the eligibility of the employee for benefits upon the ground that the employee had been granted a pregnancy leave of absence and that, therefore, no severance of the employer-employee relationship had occurred.

Thereafter respondent petitioned the superior court for a writ of mandate; and judgment was rendered vacating and setting aside said determinations, rulings and decisions insofar as they imposed charges against respondent's reserve account for unemployment compensation benefits allowed to said em-

ployee, and directing that writ of mandate issue in accordance therewith.

The essential basis of the judgment, as shown by the lower court's findings of fact and conclusions of law and its memorandum of decision, was that the employee was bound by the provisions of the collective bargaining agreement; that she must be deemed by reason thereof to have left her most recent work voluntarily without good cause; and that, therefore, the charges against the employer's reserve account were illegal and void. The department and its appeals board have appealed to this court from said judgment.

It is preliminarily necessary to consider appellants' general contention that an employee cannot be deemed to have "left his most recent work" and to be disqualified for unemployment compensation benefits, unless the employment relationship has been terminated; and that, since the employee herein was given a leave of absence, the employment relationship was not terminated.

The import of said contention is that, although an employee on leave of absence may not have performed services for which wages are payable and is therefore "unemployed" within the meaning of section 1252 of the Unemployment Insurance Code, such employee on leave must nonetheless be held to be simultaneously sufficiently "employed" within the meaning of sections 1256 and 1032 of said code so as not to be disqualified for unemployment compensation benefits and so as to deprive the employer of the right to a ruling as to the employee's eligibility for benefits.

We are in accord with the trial court's opinion as expressed in its decision that said contention is untenable. Said contention is predicated upon the unjustified assumption, based on a narrow and isolated construction of certain provisions of said sections 1256 and 1032, that an employee cannot be deemed to have "left [her] most recent work" or the employer's employ unless the employment relationship has been terminated; and, upon the unsound and unrealistic theory that an employee can be simultaneously sufficiently "unemployed" to make her eligible for benefits and still sufficiently "employed" to disentitle the employer to a ruling as to her eligibility for benefits.

Said section 1256 of the Unemployment Insurance Code provides in part, "An individual is disqualified for unemployment compensation benefits if the director finds that *he*

*left his most recent work* voluntarily without good cause . . .''
(Emphasis added.)

The wording of said section does not expressly nor impliedly lend any support to appellants' contention that the employment relationship has to be terminated before the employee can be held to have ''left his most recent work.'' On the contrary, the use of such limited and particular wording connotes and implies that an employee may be disqualified for benefits, even though the employment relationship may not have been completely or technically terminated.

Similarly, the provisions of section 1032[1] (especially when construed in conjunction with other pertinent and controlling sections of the Unemployment Insurance Code) do not support appellants' contention that the employment relationship has to be terminated before an employer has any right to have charges against his reserve account removed.

The employer has the right to challenge unemployment compensation awards to ineligible individuals, and no charges can be made against the employer's reserve account unless the individual allowed benefits is eligible for unemployment compensation benefits. (*Bodinson Mfg. Co.* v. *California Emp. Com.*, 17 Cal.2d 321, 330-331 [109 P.2d 935] ; Unemp. Ins. Code, §§ 1251-1264.)

It is clear, therefore, that section 1032 must be construed in conjunction with the provisions of sections 1251-1264 for the purpose of determining whether the employer's reserve account can be legally charged; and that, so construed, section 1032 cannot authorize the charging of payments to ineligible individuals against the employer's reserve account, even though the employment of such individuals has not been terminated.

Additionally, the mere circumstance that the employer or the collective bargaining agreement has designated the period of required layoff during pregnancy as a ''leave of absence'' does not negate the fact that the employee during said required layoff period has left her most recent work, although it may establish that the leaving was involuntary as hereinafter discussed. (See *Myerson* v. *Board of Review*

[1]Section 1032, Unemployment Insurance Code, provides in part, ''If it is ruled . . . that the claimant left the employer's employ voluntarily and without good cause . . . , benefits paid to the claimant subsequent to the termination of employment due to such voluntary leaving . . . shall not be charged to the account of such employer . . .''

[N.J. App.Div.], 43 N.J. Super. 196 [128 A.2d 15], hereinafter reviewed.)

We are not unmindful that the Unemployment Insurance Appeals Board has held, in a series of decisions involving similar or closely related situations, that employees so on leave have not left their most recent work or the employer's employ; and that, since no termination of the employment relationship can be said to have occurred in such situations, their employers are not entitled to a ruling determining the cause of such nonexistent termination of the employment or to a determination that the charges made against their reserve accounts should be removed.

It is settled, however, that, while great weight must be given the long-standing administrative construction of statutes, such administrative rulings are not binding on the courts; that the final responsibility for the interpretation of the law rests with the courts; and that it is the duty of the court, where the prior administrative construction is contrary to and not justified by the statutory law as herein, to disregard such prior administrative construction and to state the true meaning of the statutes, even though this requires the overthrow of earlier administrative constructions. (*Whitcomb Hotel, Inc.* v. *California Emp. Com.*, 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405]; *Bodinson Mfg. Co.* v. *California Emp. Com., supra,* 17 Cal.2d 321, 325-326.)

While holding that the employee herein "left [her] most recent work" within the meaning of the statute, we are of the further opinion that the trial court erred in determining that the employee left her most recent work *"voluntarily* without good cause,"[2] and that, by reason thereof, the judgment must be reversed.

The crux of the matter is whether or not the leaving herein was "voluntary," where the pregnant employee was required to leave her work by reason of the provisions of a collective bargaining agreement between her employer and a labor union of which she was a member. This question has never been passed upon by a court of appellate jurisdiction in California

[2]It is not contended that the employee's pregnancy in itself constituted "good cause" for leaving her work; and indeed it could not be so contended since there was no showing that the employee was the major support of her family. (Unemp. Ins. Code, § 1264.) Appellants' contention is rather that the employee was involuntarily compelled to leave her work; and it is, of course, obvious that, if the employee was involuntarily compelled to leave her work, it cannot be said that she did not leave without good cause.

and the matter is one of first impression in this state. However, this and the closely related question as to whether an employee's leaving was "voluntary" where the collective bargaining agreement required him to retire at a certain age have been passed upon by courts of record in New Jersey and Pennsylvania; and it is held in said states that the employee's leaving under such circumstances was "involuntary." (*Myerson* v. *Board of Review, supra* [N.J. App.Div.], 43 N.J. Super. 196 [128 A.2d 15]; *Campbell Soup Co.* v. *Board of Review* [N.J. Supreme Court], 13 N.J. 431 [100 A.2d 287]; *Smith* v. *Unemployment Compensation Bd. of Review* [Pa. Supreme Court], 396 Pa. 557 [154 A.2d 492]; *Klaniecki* v. *Unemployment Comp. Bd. of Review* [Pa. Superior Court], 190 Pa.Super. 324 [154 A.2d 419]; *Warner Co.* v. *Unemployment Comp. Bd. of Review* [Pa. Supreme Court], 396 Pa. 545 [153 A.2d 906].)[3]

This rule has now been clearly adopted in California so far as concerns the retirement of an employee under a collective bargaining agreement. While not affecting the law as it existed at the time of inception of the events in the present case, it is significant that the California Legislature, at its 1959 session, and shortly following an adverse ruling in a trial court case (*Regal Pale* v. *California Unemployment Ins. Appeals Board,* S.F. Superior Ct., No. 474268) adopted the following amendment to section 1256, Unemployment Insurance Code: "An individual whose employment is terminated under the compulsory retirement provisions of a collective bargaining agreement to which the employer is a party, shall not be deemed to have left his work without good cause." Such a change may indicate a legislative intent to clarify its true meaning. (*Koenig* v. *Johnson,* 71 Cal.App.2d 739, 753 [163 P.2d 746]; *Union League Club* v. *Johnson,* 18 Cal.2d 275, 279 [115 P.2d 425].)

While *Campbell Soup Co.* v. *Board of Review, supra,* is undoubtedly the leading and basic case, preliminary consideration of the cited Pennsylvania decisions will serve to illuminate and resolve the question at issue. Said cited Pennsylvania decisions were reported and in most instances decided after the lower court had rendered its judgment herein; and they overruled the doctrine of *Rzepski* v. *Unemployment*

[3]Decisions in other jurisdictions (Minnesota, Michigan and New York) having a related or claimed pertinency will be cited and discussed at a later point.

*Compensation Board of Review* (Pa. Superior Court), 182 Pa.Super. 16 [124 A.2d 651], upon which the lower court relied in substantial part as shown by its memorandum of decision herein. As the respondent rather quaintly states in its brief, Rzepski is no longer the law in Pennsylvania and that state has been guilty of "falling from grace."

In *Rzepski*, the decision disqualifying the pregnant employee for unemployment compensation benefits was based on substantially the same grounds relied upon by the lower court herein and now again asserted by respondent, namely: that the collective bargaining agreement was binding on both the employer and the employee since she was a member of the union; that her unemployment upon her pregnancy was the direct result of a contract negotiated by her delegated bargaining agent and was therefore "voluntary."

The subsequently decided Pennsylvania cases, starting with *Warner Co.* v. *Unemployment Comp. Bd. of Review, supra,* 396 Pa. 545 [153 A.2d 906] repudiated the philosophy and doctrine of *Rzepski.* As stated in Warner, ". . . the collective bargaining agreement should not control in determining the eligibility of a retired employee for unemployment compensation; *rather, the factual matrix at the time of separation should govern.*"

As later stated in *Smith* v. *Unemployment Compensation Bd. of Review, supra,* 396 Pa. 557 [154 A.2d 492], wherein the Supreme Court of Pennsylvania reversed a ruling denying compensation benefits to a pregnant employee, "Here, although the pregnancy provision is a binding condition of employment, it cannot in any way thwart the appellant's right to unemployment benefits. The appellant was willing and able to work; and when her employment was discontinued, it was against her will. Therefore, she did not 'voluntarily leave' work as far as her state-granted employment benefits are concerned."

It is further held in the Smith case that it was immaterial whether the provisions prohibiting a female employee from continuing at work beyond the fifth month of pregnancy, was a contractual part of the collective bargaining agreement or whether it was a private agreement between the employee and the employer.

In *Campbell Soup Co.* v. *Board of Review, supra,* 13 N.J. 431 [100 A.2d 287] the Supreme Court of New Jersey reversed a judgment holding that employees, retired on pension

at age 65 as required by a collective bargaining agreement, had left their employment "voluntarily without good cause," and were disqualified for unemployment compensation benefits. The opinion states in part: "If the inquiry is isolated to the time of termination, plainly none of the claimants left voluntarily in the sense that on his own he willed and intended . . . to leave his job. . . . They left because they had no alternative but to submit to the employer's retirement policy, however that policy as presently constituted was originated. Their leaving in compliance with the policy was therefore involuntary . . . ."

Subsequently in *Myerson* v. *Board of Review* (N.J. App. Div.), *supra,* 43 N.J. Super. 196 [128 A.2d 15] the appellate court therein stated, in rejecting a contention that a distinction should be drawn between cases where the employment relationship is permanently severed at retirement age and cases where the employee is only given a pregnancy leave of absence: "Unemployment compensation is not to be denied persons merely because the employer or the collective bargaining agreement designates a period of unemployment as a leave of absence. . . . Hence the fact that Mrs. Myerson [a pregnant employee] was given a leave of absence, with seniority rights and other privileges protected, is not determinative of the case."

We are convinced that the New Jersey and Pennsylvania cases are soundly founded and that the doctrine so clearly set forth therein should be followed in this state. The cases cited and relied upon by respondent are either not in point or, in our opinion, unsoundly reasoned.[4]

The leading case setting forth rule contrary to the New Jersey and Pennsylvania rule is *Bergseth* v. *Zinsmaster Baking Company* (Minn. Supreme Court), 252 Minn. 263 [89 N.W.2d 172]. The decision in said case (i.e., that employees retired on pension as required by a collective bargaining agreement are disqualified for unemployment compensation) is based in part on a Minnesota statute differing substantially

---

[4] The principal cases cited by respondent are: *Bergseth* v. *Zinsmaster Baking Company* (Minn. Supreme Court), 89 N.W.2d 172; *In re Malaspina's Claim* (N.Y. Court of Appeals), 309 N.Y. 413 [131 N.E.2d 709]; and two Michigan Supreme Court cases (*I. M. Dach Underwear Co.* v. *Michigan Emp. Sec. Com'n,* 80 N.W.2d 193; *Malone* v. *Michigan Emp. Security Com'n,* 90 N.W.2d 468) dealing with eligibility to unemployment compensation during plant shutdowns in vacation periods pursuant to collective bargaining agreements.

from the New Jersey, Pennsylvania and our California statutes and in part upon the proposition that the retirement was "voluntary" because required by a collective bargaining agreement binding on the employee as well as the employer.

The Minnesota statute provides that an individual shall be disqualified for benefits, "If such individual voluntarily and without good cause *attributable to the employer* discontinue[s] his employment . . ." The italicized qualification stated in the Minnesota statute is not contained in the New Jersey, Pennsylvania or our California statutes which only specify in essence that an employee is disqualified for benefits where he has left his work "voluntarily without good cause." The difference in the statutes is obviously substantial and material; and, insofar as *Bergseth* is based on said Minnesota statute, the decision is not in point.

Further and insofar as *Bergseth* is predicated on the proposition that retired employees are disqualified for benefits because the collective bargaining agreement is binding on them, it overlooks the real point at issue and is unsound, as are the Michigan cases cited in previous footnote insofar as they are based on any such proposition or theory.

There is not the slightest doubt, of course, that a collective bargaining agreement is ordinarily to be regarded as the union member's own voluntary act, and that the provisions of such a collective bargaining agreement are binding on an employee who is a member of the union as well as on the employer. The New Jersey and Pennsylvania cases all recognize the binding effect of a collective bargaining agreement between the employer and the employee *inter se*; and such is, of course, also the established law in California as respondent points out. (*Chavez* v. *Sargent*, 52 Cal.2d 162, 197-198 [339 P.2d 801].)

However, no true question as to the binding force of the collective bargaining agreement was involved in *Bergseth*; and it appears to us the court there erred in so assuming. The employees therein had duly retired at age 65 as required by provisions of the collective bargaining agreement; and, as previously noted, the employee herein as required had duly applied for and was granted a leave of absence at the end of the fourth month of pregnancy.

No one was contending in *Bergseth* that the provisions requiring retirement were not binding and had not been complied with; and no one is contending in the case at bar that the provisions requiring termination or the taking of a leave of

absence upon pregnancy were not binding and were not complied with.

The binding effect of the provisions of the collective bargaining agreement was not involved; but only the separate and different question as to whether the employee upon retirement in the Bergseth case (or upon taking a required leave of absence for pregnancy in this case) was entitled to statutory unemployment benefits subsequent to the retirement. The provisions of the collective bargaining agreement in *Bergseth* (like the provisions of the agreement in the case at bar) were silent as to said matter; and, as stated in *Smith* v. *Unemployment Compensation Bd. of Review, supra,* 154 A.2d 492, such contract cannot be construed to deprive an employee of a statutory right to unemployment compensation. Indeed and as pointed out in *Campbell Soup Co.* v. *Board of Review, supra,* 100 A.2d 287, the provisions of a collective bargaining agreement cannot be construed as constituting a waiver of a statutory right to unemployment compensation without rendering such provisions illegal in New Jersey, as would also be the case in California under the provisions of section 1342 of the Unemployment Insurance Code.

The other principal case relied upon by respondent (*In re Malaspina's Claim, supra,* N.Y., 131 N.E.2d 709) is essentially different from the case at bar. In Malaspina, the collective bargaining agreement required the employer to discharge any employee who failed to join the union within a stated period after his employment or who failed to pay the required dues to the union. The employee failed to join the union or pay the dues; the employer discharged him; and the court of appeals held that the employee left his employment voluntarily without good cause, and was disqualified for unemployment compensation.

It seems sufficient to point out that Malaspina failed to comply with and violated the collective bargaining agreement, whereas the employee in the case at bar complied with the collective bargaining agreement. In Malaspina, the leaving was caused by the voluntary act of the employee in not complying with the terms of the employment, whereas in the instant case the leaving resulted from the compliance with the terms of the employment. Malaspina's leaving, therefore, was properly regarded as voluntary, whereas the employee's leaving herein can only be properly regarded as involuntary.

Finally, it would be illogical to hold that the employee is

disqualified for unemployment compensation benefits merely because the provisions requiring her to take a leave of absence at the end of the fourth month of pregnancy were part of a collective bargaining agreement.

Respondent concedes, as indeed it must, that the employee would not have been disqualified for benefits if the employee had been "let out as a result of company pregnancy policy alone" and that "her leaving [in such case] would have been involuntary and she would have been entitled to unemployment benefits."

It is entirely immaterial, however, whether her leaving was the result of company policy or a collective bargaining agreement. (*Smith* v. *Unemployment Compensation Bd. of Review, supra,* 154 A.2d 492; *Klaniecki* v. *Unemployment Comp. Bd. of Review, supra,* 154 A.2d 419.)

As the Supreme Court of Pennsylvania further stated in *Warner Co.* v. *Unemployment Comp. Bd. of Review, supra,* 153 A.2d 906, 909: "Were Gianfelice not covered by the collective bargaining agreement involved here, the company could have dismissed him at its pleasure. . . . Were he so discharged, however, he would be entitled to unemployment compensation. . . . Does the fact that a collective bargaining agreement is present change these considerations? . . . It would be anomalous to say that, in gaining . . . [protection under the collective bargaining agreement], an employee has lost a benefit which he otherwise would receive from the state . . . on the theory that he has voluntarily agreed to quit."

The judgment is reversed.

Ashburn, J., concurred.

FOX, P. J.—I dissent.

The employee, as a member of the union, is bound by the terms of the collective bargaining agreement entered into on her behalf by her authorized representatives and which was also ratified by the membership. (*Chavez* v. *Sargent,* 52 Cal. 2d 162, 197 [339 P.2d 801]; *Division of Labor Enforcement* v. *Standard Coil etc. Co.,* 136 Cal.App.2d Supp. 919, 921-922 [288 P.2d 637].) By the terms of that agreement the employee, Mrs. Steffan, agreed that in the event of pregnancy she would not work "beyond the end of the fourth month." She was then given the right to "voluntarily terminate" her employment, or, if she had been in the employ of the company

at least one year, she could apply for a formal leave of absence. Having worked for the company for more than a year, Mrs. Steffan applied for the leave of absence, which was granted.

Section 1256 of the Unemployment Insurance Code, at the times here material, provided that "an individual is disqualified for unemployment benefits if . . . [she] left [her] most recent work voluntarily without good cause . . ." That Mrs. Steffan "left [her] most recent work" is not disputed. The decisive question is: Did she do so voluntarily? Mrs. Steffan is deemed to have consented to the terms of the collective bargaining agreement. She then agreed to "voluntarily terminate" her employment in the event she became pregnant before she had worked for the company a year. Having worked for more than a year it was not necessary for her to "voluntarily terminate" her employment. She was then privileged to have a leave of absence and temporarily to cease working. She thus preserved her seniority rights with the company. It is difficult to see how her leaving work temporarily was any less voluntary than the termination of her employment would have been had she worked less than a year. Furthermore, having consented to the agreement, any action she later took in carrying out its terms should be considered as voluntary on her part. It therefore follows, under the terms of section 1256 as it then read, that Mrs. Steffan voluntarily left her most recent work and was not entitled to unemployment benefits. I would affirm the judgment.

Respondent's petition for a hearing by the Supreme Court was denied June 29, 1960. Schauer, J., did not participate therein.