Scileppi, J.
(dissenting). The claimants participated in a wildcat strike. They deliberately violated the no-strike and no-lockout clauses and disregarded the grievance procedures, which included arbitration, in the collective bargaining agreement. Despite the urging by the employer that such procedures he followed, and despite an offer by the employer to waive certain steps of the grievance procedure, they left their work. They continued to strike in complete disregard of the directive *11 of the general vice-president of the International Union to the local urging all members to return to work and to adjust the issues in accordance with the grievance procedure. No one disputes that this was an illegal strike. While on strike, they participated in mass picketing to prevent entry into the plant. There is proof that in so doing they used physical force by pushing and shoving and shouting and mass general resistance to those passing the picket lines.
The decisions below would permit an employee to breach an important provision of a collective bargaining agreement and, if for that reason he is discharged, his loss of employment must be regarded for unemployment insurance purposes, the same as if he had been discharged without cause. This does not accord with Atkinson v. Sinclair Refining Co. (370 U. S. 238, 246) where the court said: “It is universally accepted that the no-strike clause in a collective agreement at the very least establishes a rule of conduct or condition of employment the violation of which by employees justifies discipline or discharge ”.
There was a finding in this case by the arbitrators in March, 1961 and before the Unemployment Insurance Appeal Board made its final determination, that the union membership had no right to disregard the grievance procedure and engage in a work stoppage in violation of the no-strike clause of the contract and predicated the discharges on ‘ ‘ misconduct above and beyond the act of engaging in an illegal strike ”.
In enacting section 501 of the Labor Law, the Legislature said ‘ ‘ that in its considered judgment the public good and the well-being of the wage earners of this state require the enactment of this measure for the compulsory setting aside of financial reserves for the benefit of persons unemployed through no fault of their own ” (emphasis supplied) (Matter of Ferrara [Catherwood], 10 N Y 2d 1, 8).
The claimants here were discharged the first day after the strike ended for misconduct, and that is when they lost their status as employees (see Matter of Sadowski, 257 App. Div. 529). Accordingly, the loss of employment due to the industrial controversy and the loss of employment due to discharge for misconduct are separate and distinct in time and circumstance and may not be given unitary treatment. Under these circum *12 stances, there is no imposition of a penalty twice for the same conduct, as asserted by claimants (cf. Matter of Crowe [Corsi], 280 App. Div. 427, affd. 305 N. Y. 699).
It is recognized that the prevention of strikes is one of the principal purposes of labor contracts and a no-strike provision is the chief advantage which an employer can reasonably expect from a collective labor agreement (see Steelworkers v. Warrior & Gulf Co., 363 U. S. 574).
To sustain the decisions below would dilute or completely destroy the effectiveness of a no-strike clause and arbitration provisions (Matter of Malaspina [Corsi], 309 N. Y. 413, 419; Teamsters Local v. Lucas Flour Co., 369 U. S. 95, 105).
The majority’s holding would relegate the employer to remedies under section 301 of the National Labor Relations Act (U. S. Code, tit. 29, § 185) in such a dispute as here involved, but the fact is that an action thereunder may be brought only against the union, not union agents or members (Atkinson v. Sinclair Refining Co., supra). Moreover, in this case, no action against the local union exists because no official strike vote was taken, and no action exists against the International Union since it did not call the strike but expressly urged the members to return to work. Thus if claimants succeed, the employer is left without adequate remedy against them for engaging in the illegal strike.
On the question of whether or not the strike suspension and the misconduct disqualification can be simultaneously applied, I do not believe that there is any such simultaneous application here for the reasons already stated.
On the question of jurisdiction, I conclude that the Unemployment Insurance Appeal Board possesses jurisdiction to delve into the merits of an industrial controversy. In Matter of Gil-martin [Catherwood] (10 N Y 2d 16), relied on by the Appellate Division, no question of claimants’ misconduct was involved. It involved the existence or absence of an industrial controversy. In my opinion, subdivision 3 of section 593 not only permits the board to make ‘1 value judgments as to employee conduct ”, it requires them to be made. I agree with appellant that to give effect to the legislative policy, only those unemployed through no fault of their own are entitled to benefits (§ 501). *13 Bather than circumventing the intent of the Legislature by examining the merits of the dispute in section 593 (subd. 3) cases, such an examination, with its concomitant determination as to employee conduct, is required to effect the legislative intent. Befusal to make such an inquiry constitutes an abdication of responsibilities imposed upon the board by the Legislature. As to the effect of claimants’ striking in violation of the collective bargaining agreement, I would hold with the overwhelming weight of authority that this constituted misconduct within the sense of subdivision 3 of section 593 of the Labor Law. The New York board, in fact, has adopted the definition of “misconduct ” laid down by the "Wisconsin Supreme Court in Boynton Cab Co. v. Neubeck (237 Wis. 249, 259-260): “the intended meaning of the term ‘ misconduct ’ * * * is limited to conduct evincing such wilful or wanton disregard of an employer’s interests as is found in deliberate violations or disregard of standards of behavior which the employer had the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer’s interests or of the employee’s duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed [1] misconduct ’ within the meaning of the statute.” Since, as I read the statute, its terms do not require that the misconduct mentioned reach the level of a misdemeanor or other criminal or quasi-criminal conduct, I agree with the Boynton definition and believe that this court should adopt it in this case.
Lastly, the consequences of sustaining the decision below is that the employer is actually subsidizing an illegal strike, outlawed by its contract with the union, against its own interest and with its own funds. Such a result is dictated neither by statute nor good sense and the majority, in my opinion, have reached what amounts to an unjust result.
I, therefore, would reverse and dismiss claimants’ claim for unemployment insurance benefits.
*14 Chief Judge Desmond and Judges Burke, Bergan and Keating concur with Judge Fuld; Judge Scileppi dissents and votes to reverse in an opinion in which Judge Van Voorhis concurs.
Order affirmed.